No. 33,543

ROBERT TAYLOR, *Appellee*, v. THE MISSOURI PACIFIC RAILROAD
COMPANY, *Appellant*.

(73 P. 2d 62)

Opinion filed November 6, 1937.

*W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener*, all of
Atchison, for the appellant.

*Harold McGugin,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was a proceeding under the workmen's compensation act. From an award in favor of the workman or claimant, the employer appeals, presenting for our consideration three questions.

The first question is whether the appellee was in appellant's employ under the act at the time of the injury, and in connection therewith it is argued the appellee was engaged in the interstate and not the intrastate activities of the appellant. We first observe the journal entry of the district court recites it was stipulated appellee was working under and subject to the provisions of the workmen's compensation act on intrastate employees. That stipulation would seem to settle the matter. That court also found, in addition to the admissions of the parties, that on April 10, 1936, the parties were working under and subject to the provisions of the compensation act. The finding was supported by evidence which was that on April 8 a certain engine used in interstate commerce was placed in the roundhouse for inspection. Appellee's duty was to remove plugs so the boiler could be cleaned and washed. While so working on April 10 he received the claimed injuries. The engine was not

put in service until April 13. A somewhat similar state of facts and a like contention were considered in *Begley v. Missouri Pac. Rld. Co.*, 128 Kan. 790, 280 Pac. 902, wherein it was said:

"On the other hand, it has been authoritatively held that a machinist's helper who was injured in a roundhouse while making repairs on a railway engine was not engaged in interstate commerce, although it had been used in interstate commerce three days prior to the accident and was again put to work in that commerce immediately after the accident. (*Minneapolis & St. Louis R. R. Co. v. Winters*, 242 U. S. 353, 61 L. Ed. 358.) Our own court reached a similar conclusion in *Defenbaugh v. Railroad Co.*, 102 Kan. 569, 171 Pac. 647, where it was held that a workman who was blown from the top of a freight car while it was undergoing repairs at the regular shop of the railway company was not engaged in interstate commerce, as the car itself was not then being used in any sort of commerce, state or interstate, although it had frequently been used in interstate commerce theretofore and doubtless would be put to such use after being repaired." (p. 794.)

and it was held the employee there was not engaged in interstate commerce. A writ of certiorari to the supreme court of the United States was denied. (280 U. S. 613, 50 S. Ct. 162, 74 L. Ed. 655.) (See, also, *Baxter v. Chicago, R. I. & P. Rly. Co.*, 139 Kan. 443, 32 P. 2d 451, and cases cited.) The facts and the law do not sustain appellant's contention.

The second question is that appellee did not give the ten-day notice required by G. S. 1935, 44-520. The trial court found that on the morning appellee was hurt he told his immediate superior he had hurt himself working on the engine. It also found that while the respondent (appellant) contended it did not have ten days' notice of the alleged accidental injury, there was no evidence to show prejudice by lack of such notice. Our examination of the record shows both findings have support in the evidence. The question must be resolved against appellant.

The third question is whether appellee gave the ninety-day written notice required by G. S. 1935, 44-520a. The trial court found written notice was served upon respondent by registered mail on December 8, 1936, the last medical attention being furnished November 28, 1936. The question resolves itself into whether the evidence sustains the finding. If this finding is supported by competent evidence, it may not be disturbed by this court. (*Brown v. Shellabarger Mill & Elev. Co.*, 142 Kan. 476, 490, 50 P. 2d 919.) The statute requiring written notice of claim for compensation provides that such written claim shall be delivered to the employer within ninety days after the accident, or where compensation payments

have been suspended within ninety days after the last payment. (See G. S. 1935, 44-520a.) In *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131, it was held:

"The furnishing of medical aid to an injured employee constitutes the payment of compensation within the meaning of R. S. 1931 Supp. 44-520a, and a written claim for compensation filed within ninety days of the last furnishing of medical aid is filed in time." (Syl. ¶ 3.)

And to the same effect, see *Ketchell v. Wilson & Co.*, 138 Kan. 97, 23 P. 2d 488, and *LaFever v. Olson Drilling Co.*, 142 Kan. 431, 49 P. 2d 967. Cf. *Graham v. Pomeroy*, 143 Kan. 974, 57 P. 2d 19, wherein it was held that a barred claim could not be revived.

The evidence in the instant case on the question of whether claimant received medical care and attention is conflicting, but that there is evidence to support the trial court's finding is demonstrated by the following: The claimed injury occurred on April 10, 1936, and on that day the company's physician, Doctor Fortner, called on claimant. Doctor Fortner stated that he made a second visit several days later. Claimant stated he was in bed close to three months. Doctor Fortner testified that later claimant had come to his office. In answer to a question as to whether he had seen the claimant in the meantime, Doctor Fortner said:

"No, but I was in communication with the family over the telephone at different times. His wife would call me up and I gave instructions."

Doctor Fortner made arrangements and the company furnished transportation for claimant to go to the Missouri Pacific Hospital at St. Louis, and he was there from August 14 to August 26, 1936. Doctor Fortner further stated that claimant called on him after he returned from the hospital. "I didn't particularly treat him, but examined him and checked up on him after he came back from the hospital both times."

On November 27, 1936, he was again sent to the same hospital and was examined the next day, and under date of December 1, 1936, the chief surgeon notified the appellant's superintendent at Coffeyville that claimant had been unable to work since April 1, 1936, due to a stroke which he suffered at that time; that he had heart trouble and high blood pressure, and in the surgeon's opinion he was totally and permanently disabled. We note that claimant, who is a colored man, during a part of the times above mentioned also received attention from Doctor Butler, a colored physician, the explanation being that there was a mutual understanding among the

doctors he would look after the colored patients. Even so, it is clearly deducible from the evidence that from the time of the accident up to November 28, 1936, the claimant was receiving medical attention from the company's physician and its hospital, if not constantly, at least so regularly there was never a ninety-day period in which he did not receive some medical attention.

Under the circumstances, the written claim for compensation was filed in time.

The judgment of the trial court is affirmed.